IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF NORTH CAROLINA
Civil No. 3:26-CV-435

Asha Lewis,

      Plaintiff,

      v.

Businessolver.com, Inc.,

      Defendant.

**COMPLAINT**
(Jury Trial Demanded)

## INTRODUCTION

Plaintiff, Asha Lewis ("Ms. Lewis" or "Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendant, Businessolver.com, Inc. ("Businessolver" or "Defendant") and alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff is a black woman who worked for Businessolver.

2. Businessolver fired Ms. Lewis after she reported disparate treatment based on race to management and Human Resources.

3. This is an action for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981.

### JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Title VII of the Civil Rights Act and 42 U.S.C. § 1981.

1

5. This Court has personal jurisdiction over Defendant because it, at all times material, continuously conducted business in Mecklenburg County, North Carolina.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant resides in this district, and 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to the claim occurred in this district.

## CONDITIONS PRECEDENT

7. On March 20, 2025, Ms. Lewis timely filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging race-based discrimination, disability-based discrimination, age-based discrimination, and retaliation. (EEOC Charge Number 430-2025-00787). (See Ex. 1).

8. On March 4, 2026, the Charlotte District EEOC office issued a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice. (See Ex. 2)

## PARTIES

9. Plaintiff, Asha Lewis, resides in Cornelius, North Carolina, and was an employee at Defendant, Businessolver, between August 2022 and December 2, 2024.

10. Defendant is an employee benefits administration technology company with its principal address located at 1025 Ashworth Road, West Des Moines, Iowa 50265. Defendant is an employer as defined by 42 USC § 2000e.

11. Defendant maintains a local office at 8520 Cliff Cameron Drive, Suite 420, Charlotte, NC 28269.

12. Defendant operates in multiple states and has over 500 employees.

## FACTUAL ALLEGATIONS

2

13. Ms. Lewis, a black female, began her employment with Defendant as a Member Services Supervisor on or about August 22, 2022.

14. In this role, Ms. Lewis supervised a team of Member Advocates (phone agents) and Processors

15. Ms. Lewis initially reported to the Senior Director of Member Services, Steven Bond ("Bond").

## PLAINTIFF'S DOCUMENTED PERFORMANCE

16. Ms. Lewis was regularly recognized as a top performer in this role.

17. The team led by Ms. Lewis was often the highest-performing team in her department.

18. Ms. Lewis had no documented performance issues.

19. Defendant took no disciplinary action against Ms. Lewis.

20. Ms. Lewis was allowed to interview for senior positions multiple times throughout her employment, which she would not have been allowed to do if she had disciplinary issues.

21. Ms. Lewis was appointed as a Diversity, Equity, Inclusion, and Belonging ("DEIB") ambassador.

22. In October 2024, Ms. Lewis applied and was selected to represent Businessolver on the Miami Solver Trip.

23. The Solver Service Trips are immersive, week-long volunteer excursions sponsored by the Businessolver Foundation, and designed to help remote employees build empathy, connect with company culture, and give back.

24. The Solver Service Trips bring together a small cross-functional group of employees with various nonprofits in a host city.

3

25. In 2024, Ms. Lewis was chosen to facilitate the Juneteenth Celebration for Defendant's entire organization.

## COMPLAINTS OF DISPARATE TREATMENT

26. At multiple times during her employment, Ms. Lewis complained of disparate treatment by her director, Bond.

27. Specifically, Ms. Lewis complained that Bond provided more opportunities for career advancement to her white peers.

28. In or about April 2024, Ms. Lewis noticed that two of her white co-workers were promoted to unadvertised Supervisor II positions.

29. Ms. Lewis complained to management and Human Resources on multiple occasions that Bond was not providing her with the same career advancement opportunities as her white co-workers.

30. Ms. Lewis was not the only black employee with this concern.

31. In or about June 2024, Defendant noticed that based on pulse or company engagement surveys, Ms. Lewis and other black employees claimed that they were being treated unfairly, unhappy with their direct leadership, and not being provided with the same opportunities for career advancement as their white peers.

32. Defendant hired an outside agency, due to the survey-collected data, to partner with its DEIB committee for guidance and instruction on how to address the concerns of its black employees.

33. Their first course of action was to form focus groups, inviting all of its black employees to express their concerns and address their experiences within their departments, with leadership, peers, and their concerns about the lack of career advancement and development.

4

34. As a DEIB ambassador, Ms. Lewis sat in three of the four focus groups.

35. She attended one of the focus groups as an employee so she could share her personal experience.

36. The black employees who attended the focus group shared how many of them were mentally impacted by blatant racism and felt unsupported by leadership, with no opportunities for career growth or development. They also believed there was a lack of communication from leadership and felt they were treated as if they were angry black person when they spoke about disparities.

37. The black employees also expressed that they feared retaliation and loss of their jobs if they escalated matters to Human Resources or the Chief Executive Officer.

38. After repeated requests for Human Resources and senior management intervention, in late July 2024, Ms. Lewis asked the Director of Human Resources, Ashley Ellis ("Ms. Ellis"), if she could be transferred to another director.

39. Based on information and belief, Defendant's consultant, Holistic Business Partners, agreed that moving Ms. Lewis to a different director was an appropriate course of action in response to Ms. Lewis's complaint in a recent meeting that Bond mistreated her based on race.

40. The consultant met with Ms. Lewis and Bond for several sessions to determine if the pair could continue working together.

41. In the sessions, Bond apologized and admitted to damaging their relationship by dismissing her complaints of mistreatment and favoritism without investigation.

42. On September 11, 2024, Ms. Ellis advised Ms. Lewis that she would start reporting to Director Bennie Gallardo ("Gallardo"), who is Hispanic, and that Engagement Partner Kily Maddox would also attend their one-on-one meetings.

5

43. Months after the reassignment, on November 4, 2024, Gallardo began to allege that Ms. Lewis had a troublesome attitude, but provided no course of action for her to follow or ways to address the alleged behavior.

44. Gallardo also provided an example of an alleged complaint against Ms. Lewis that later proved to be unfounded

45. On November 12, 2024, Ms. Lewis addressed her concerns about Gallardo's critiques and lack of direction or instruction with Defendant's consultant and Gallardo present.

46. Ms. Lewis believed this was a continuation of what she experienced with Bond.

47. Gallardo stated, during the November 12, 2024, meeting, that he had not received any complaints about Ms. Lewis since she began reporting to him.

48. However, Gallardo stated that despite her performance, he had no intention of discussing career development with Ms. Lewis until she fixed her attitude.

49. The consultant suggested that Ms. Lewis draft a 321 plan to demonstrate her willingness to foster interpersonal relationships.

50. Ms. Lewis created the 321 plan and sent it to the consultant and Gallardo.

51. On November 25, 2024, Gallardo again accused Ms. Lewis of being able to develop collaborative working relationships despite her team's consistent track record of success.

52. Ms. Lewis informed Gallardo that she had contacted a senior member of the organization to mentor her on developing collaborative work relationships. However, Gallardo was not pleased to hear

53. On December 2, 2024, Defendant's Human Resources department informed Ms. Lewis that she was not a good fit and terminated her employment.

**CLAIMS FOR RELIEF**

6

**COUNT I – Unlawful Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.***

54. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

55. Plaintiff, a black woman, is a member of a protected class, and at all relevant times was an employee covered by the protections of Title VII of the Civil Rights Act of 1964 as defined by 42 U.S.C. § 2000e(f).

56. Defendant is and at all relevant times was an employer as defined in 42 U.S.C. § 2000e(b), subject to the prohibitions of Title VII.

57. Title VII makes it illegal to discriminate based on race.

58. Plaintiff's job performance was satisfactory

59. Defendant took adverse employment action against Plaintiff by not providing the same opportunities for career advancement and promotion as her white peers.

60. Plaintiff was treated differently from similarly situated employees outside of her protected class.

61. Plaintiff suffered damages as a result of Defendant's unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

62. Defendant intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference, and as a result, is liable for punitive damages.

**COUNT II – Unlawful Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.***

63. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

64. Plaintiff, a black woman, is a member of a protected class.

65. Plaintiff engaged in protective activity complaining of discrimination, specifically disparate treatment based on race, to management and human resources.

7

66. Defendant took adverse employment action against Plaintiff by terminating her employment.

67. A causal connection exists, based on temporal proximity, between Plaintiff's protected activity and Defendant's adverse employment actions.

68. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

69. Defendant intentionally violated Plaintiff's rights under Title VII with malice or reckless indifference, and as a result, is liable for punitive damages.

### COUNT III – Unlawful Discrimination in Violation of 42 U.S.C. § 1981

70. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

71. The discriminatory conduct described above, including, without limitation, not providing the same opportunities for career advancement and promotion as her white peers, constitutes discrimination based on race.

72. Plaintiff suffered adverse employment action when Defendant denied her the same opportunities for career advancement and promotion as her white peers.

73. But for Plaintiff's race, Defendant would not have engaged in such conduct.

74. By discriminating against Plaintiff based on her race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981).

75.     Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. Further, Defendant's management countenanced or approved of the racism as exhibited by Defendant's failure to adequately address the conduct Plaintiff was subjected to.

76.     As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

77.     Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

**COUNT IV– Unlawful Retaliation in Violation of 42 U.S.C. § 1981**

78.     Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

79.     Plaintiff engaged in protected activity by complaining of discrimination, specifically disparate treatment based on race, to management and human resources and requesting a change of directors to address the disparate treatment.

80.     Plaintiff's complaints and requests constituted protected activities.

81.     Shortly after Plaintiff reported her concerns and requested a change of directors, Defendant retaliated against her by alleging she had an attitude issue and then firing her.

82.     But for Plaintiff's race, Defendant would not have engaged in these adverse employment actions.

83.     By retaliating against Plaintiff based on her race, Defendant denied Plaintiff the same right to enjoy the benefits, privileges, terms, and conditions of contracts as is and was enjoyed by non-black citizens, in violation of Plaintiff's rights under the Civil Rights Act of 1866 (42 U.S.C. § 1981).

9

84. Defendant acted with malice or reckless disregard for Plaintiff's federally protected rights. Defendant's management and human resources agents directly countenanced or approved of the retaliation against Plaintiff, as evidenced by, among other things, the termination of Plaintiff.

85. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered and will continue to suffer damages, including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

86. Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by 42 U.S.C. § 1981.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

A. Back pay and front pay for Defendant's violations of 42 U.S.C. § 1981 to the fullest extent permitted by law;

B. Compensatory damages resulting from Defendant's violations of 42 U.S.C. §1981 to the fullest extent permitted by law;

C. Punitive damages to punish Defendant's violation of 42 U.S.C. §1981 to the fullest extent permitted by law;

D. Pre-judgment and post-judgment interest;

E. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action; and

F. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Respectfully submitted on this 2nd day of June, 2026.

/s/ Kirton M. Madison
Kirton M. Madison
North Carolina State Bar No. 43029
MADISON LAW, PLLC
8936 Northpointe Executive Park Drive
Suite 240-260
Huntersville, NC 28078
Telephone: (704) 981-2790
kmadison@madlawpllc.com
ATTORNEY FOR PLAINTIFF

11